Filed 5/21/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>HENRY LEE GRANDBERRY,<br><br>     Defendants and Appellants. | A152188<br><br>(Del Norte County<br>Super. Ct. No. CRPB16-5093) |

After a jury trial, appellant Henry Lee Grandberry was found guilty of unlawful possession of a dirk or dagger while confined in state prison. (Pen. Code,[1] § 4502, subd. (a).) On appeal, Grandberry contends the trial court erred in instructing the jury—pursuant to CALCRIM No. 361—that it could draw an unfavorable inference from his failure to explain or deny incriminating evidence at trial. According to Grandberry, the instruction was improper because he did explain or deny all of the evidence against him and because the form instruction violated his due process rights by unreasonably favoring the prosecution. We reject Grandberry's constitutional argument and, concluding the instruction was appropriate given the evidence adduced at trial, we affirm.

## I. BACKGROUND

On January 13, 2017, the Del Norte County District Attorney filed an information charging Grandberry with a single felony count of unlawful possession of a dirk or dagger while confined in state prison. (§ 4502, subd. (a).) The information further alleged two prior strike offenses (§§ 667, subds. (b)-(i), 1170.12)—a 1996 conviction for first degree murder (§ 187, subd. (a)) and a 1988 conviction for second degree robbery

---

[1] All statutory references are to the Penal Code unless otherwise specified.

(§ 211).  An additional special allegation claimed Grandberry had served a prior prison term within the meaning of section 667.5, subdivision (b).

Jury trial commenced on April 10, 2017.  At trial, the prosecution presented evidence regarding a random search conducted by correctional officers on October 27, 2015, in section B on the A yard of Building 7 at Pelican Bay State Prison.  At the time of the raid, most of the inmates from B section were in the dayroom having recreational time.  Those inmates who chose not to participate in dayroom, like Grandberry, remained locked in their cells.  While the majority of the correctional officers went to the dayroom, instructing the inmates there to lie prone on the ground until they could be searched, other officers simultaneously reported to the cells of those inmates who had elected to remain behind.  Prison staff members were instructed to have the doors of the occupied cells open by the time the correctional officers arrived.

Officers Acosta and Miller went to Grandberry's cell.  Grandberry was ordered to lie prone on his cell floor for safety reasons.  Officer Miller entered the cell through the open door and made a cursory inspection to ensure there were no weapons within Grandberry's reach.  The officers then escorted Grandberry to the empty dayroom in A section and conducted an unclothed body search of the inmate.  Grandberry was instructed to take off all his clothes and place them on a table so that Officer Acosta could conduct a thorough search.  As he was searching the clothing, Officer Acosta noticed Grandberry's boxer shorts were particularly thick.  Although visually they looked like one pair, Officer Acosta discovered they were actually two pairs sewn together, with a solid object nested between them in the front center.  The object was a manufactured weapon—a four and one-half inch piece of plastic sharpened on one end, with a homemade sheath protecting the wearer from the sharp point.  Officer Acosta had seen such weapons used to cause great bodily injury and even death.

Not wanting to agitate Grandberry or possibly cause a confrontation, Officer Acosta did not announce he had found a weapon.  Instead, he placed the weapon and underwear in his pocket and allowed Grandberry to get dressed in his remaining clothing. He did not tell Officer Miller about the weapon directly, but instead looked at him in a

2

certain way which indicated he had discovered something. Officer Miller testified he understood from Officer Acosta's actions that contraband had been found. The officers then handcuffed Grandberry and placed him in a holding cell until he could be processed into administrative segregation due to the weapons offense.

On November 5, 2015, at a classification hearing regarding his recent placement in administrative segregation, Grandberry reportedly stated: "I know I messed up and everything. I was stupid and being a bozo. I screwed up." The correctional case worker who recorded the proceedings and testified at trial remembered the comment because it was "not that common that an inmate will be so apologetic during committee." For the same reason, she included the quote in the report for the hearing—the classification review—which was entered into evidence at trial. A shorter document memorializing the hearing—the classification chrono—was also admitted into evidence. The classification chrono, which is provided to inmates for appeal purposes, did not contain the above-quoted implied admission. Instead, it simply stated: "[Subject] expressed his understanding of the basis of the [Institutional Classification Committee (ICC)] action and agreed with the action."

In his defense at trial, Grandberry offered the testimony of three inmates whose description of the events paralleled statements they provided to an investigator in October 2016. Inmates Thorton and Dabney testified that, on the day of the raid, officers commanded Grandberry to strip out in his cell, taking his clothes through the tray slot in his closed cell door and searching them, including a pair of boxer shorts. The officers returned the clothes back through the slot and allowed Grandberry to put them back on before walking him into section A. Inmate Williams testified that, on the day of the raid, he saw Grandberry strip-searched in front of his cell in section A, but did not see the officers find a weapon.

Grandberry also testified on his own behalf, claiming that he was wearing only a single pair of boxer shorts when he was searched by correctional officers in October 2015 and that he did not have any weapon in his pants. He denied that the boxer shorts and weapon in evidence were his. He denied making the statement at the classification

3

hearing that he "screwed up" and was "being a bozo" and stated he had not been provided a copy of the classification review which contained the statement. Grandberry claimed if he had seen that statement ascribed to him he would have appealed it, explaining that he was familiar with the process of filing an inmate appeal and had done so previously. He admitted that he received the classification chrono and agreed it was accurate.

On April 11, 2017, a jury found Grandberry guilty as charged. Grandberry admitted the strikes and prison prior, but the trial court subsequently allowed him to withdraw his admission to the 1996 strike due to an incorrect admonition as to its consequences. At sentencing on August 10, 2017, the trial court sentenced Grandberry to a total prison term of nine years, to run consecutively to his current sentence of 84 years to life. This timely appeal followed.

## II. DISCUSSION

Grandberry contends that the trial court erred in instructing the jury that it could draw an adverse inference from his failure to deny or explain evidence against him, because there was no incriminating evidence at trial which he failed to explain or deny. He further argues the instruction violated his due process rights because it unfairly advantaged the prosecution. Assertions of instructional error in this context are reviewed de novo. (*People v. Vega* (2015) 236 Cal.App.4th 484, 495 (*Vega*); *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1469 (*Lamer*).)

### A. *Claim of Forfeiture*

We first address the Attorney General's contention that Grandberry's claims of error are forfeited because defense counsel failed to object to CALCRIM No. 361 at trial. Generally speaking, a "failure to object does not waive an instructional error on appeal if the instruction was an incorrect statement of law or the defendant's substantial rights were affected." (*Vega*, *supra*, 236 Cal.App.4th at p. 495; see § 1259.) Grandberry asserts that the challenged instruction denied him a fair trial in violation of his constitutional right to due process of law, arguably a claim that the instruction was an "incorrect statement of law" affecting his substantial rights. Moreover, when determining whether a challenged instruction affected a defendant's substantial rights,

4

cases generally equate substantial rights with reversible error, thereby requiring "an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249; see *People v. Lawrence* (2009) 177 Cal.App.4th 547, 553, fn.11.) Under these circumstances, we will reach the merits of Grandberry's arguments.

In doing so, we decline to adopt the Attorney General's position that, given the wording of CALCRIM No. 361, a defendant's substantial rights can never be violated because a jury can disregard the instruction where it is not responsive to the evidence at trial. It is true CALCRIM No. 361, by its terms, only comes into play *if* the jury finds evidence making it applicable—that is, if there is some incriminating evidence in the record that a testifying defendant has not explained or denied. Moreover, juries are generally instructed, in accordance with CALCRIM No. 200, to ignore any inapplicable instructions, as the jury was in this case: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts." Although we have found one case adopting this approach to find a similar instruction nonprejudicial (see *People v. Ballard* (1991) 1 Cal.App.4th 752, 756–757), we believe it proves too much—essentially insulating erroneous use of the instruction from challenge even where properly objected to at trial, particularly when our Supreme Court has repeatedly stressed the instruction should only be given in limited situations. (See *People v. Cortez* (2016) 63 Cal.4th 101, 117 (*Cortez*); *People v. Saddler* (1979) 24 Cal.3d 671, 681–682 & fn. 8 (*Saddler*) [expressly disapproving language in a prior appellate case that "appear[ed] to place upon a jury, in the first instance, the duty of determining whether a defendant did in fact deny or explain all of the evidence against him"].)

## B.    *CALCRIM No. 361 Instruction*

The challenged jury instruction, based on CALCRIM No. 361, stated as follows: "If the defendant failed in his testimony to explain or deny evidence against him, and if he could have reasonably been expected to do so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is

5

not enough by itself to prove guilt. The people must still prove the defendant guilty beyond a reasonable doubt. If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

CALCRIM No. 361 rests on the logical inference that if a person charged with a crime is given the opportunity to explain or deny evidence against him or her but fails to do so, then that evidence may be entitled to added weight. (*Vega*, *supra*, 236 Cal.App.4th at p. 496.) The focus of the instruction, "as its language indicates, is not on the defendant's credibility as a witness, but on the role of a testifying defendant's failure to explain or deny incriminating evidence in how jurors 'evaluat[e] that evidence,' i.e., the evidence the defendant has failed to explain or deny." (*Cortez*, *supra*, 63 Cal.4th at p. 118; see Evid. Code, § 413 ["In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case."].) However, in discussing a substantially similar pattern instruction—CALJIC No. 2.62—our high court recognized " '[i]t is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference.' " (*Saddler*, *supra*, 24 Cal.3d at p. 681.) Thus, CALCRIM No. 361 "is not to be given every time a defendant testifies." (*Vega*, at p. 497.)

A CALCRIM No. 361-based jury instruction "applies only when a defendant completely fails to explain or deny incriminating evidence, or claims to lack knowledge and it appears from the evidence that the defendant could reasonably be expected to have that knowledge." (*Cortez*, *supra*, 63 Cal.4th at p. 117.) Where a defendant's testimony contradicts or stands in conflict with the state's evidence, such "contradiction is not a failure to explain or deny." (*Saddler*, *supra*, 24 Cal.3d at p. 682; see *Lamer*, *supra*, 110 Cal.App.4th at p. 1469.) Nor is the instruction appropriate even when a defendant's testimony may seem "improbable, incredible, unbelievable, or bizarre." (*Cortez*, at p. 117.) As our high court has explained, "[t]he instruction acknowledges to the jury the

6

'reasonable inferences that may flow from *silence*' when the defendant 'fail[s] to explain or deny evidence against him' and 'the facts are peculiarly within his knowledge.' " (*Ibid.*) Accordingly, the task of the reviewing court in examining a claim that a CALCRIM No. 361-based jury instruction was improperly given is "to ascertain if [the] defendant . . . failed to explain or deny any fact of evidence that was within the scope of relevant cross-examination" and was "within [the defendant's] knowledge which he did not explain or deny." (*Saddler*, at p. 682.)

The Attorney General asserts the instruction was proper on this record because Grandberry failed to explain "why, if he did not confess, why his fellow inmates[] delayed a year before providing support for his story." Framed in this fashion, we agree with Grandberry that the Attorney General's argument does not provide the necessary evidentiary foundation for CALCRIM No. 361. Simply put, there is nothing in the record indicating Grandberry was aware of the reasons his fellow inmates failed to issue supporting statements earlier, and for Grandberry to have testified on such matters at trial would likely be deemed improper speculation. (See *Lamer*, *supra*, 110 Cal.App.4th at pp. 1470–1471 [concluding CALJIC No. 2.62 was improper where there were no facts or evidence presented that the defendant knew the motivations of another witness and thus "any testimony he may have offered on that point would have constituted speculation"].)

The essence of the Attorney General's point, however, questioning why it took so long for Grandberry to mount a defense to the weapons charge, does have merit. The record shows that Grandberry failed to explain or deny an incriminating fact that was peculiarly within his knowledge to address—why he "agreed" to the classification committee's action placing him in administrative segregation if he had not actually been in possession of an inmate-manufactured weapon hidden in his boxer shorts. Grandberry expressly denied making the following statement memorialized in the classification review: "I know I messed up and everything. I was stupid and being a bozo. I screwed up." However, the classification chrono contained a substantially similar, less colorful description of Grandberry's position: "[Subject] expressed his understanding of the basis of the ICC action and agreed with the action." At trial, Grandberry acknowledged he was

7

aware of this statement and testified it was accurate. Grandberry confirmed as well that he did not file an inmate appeal challenging the committee's decision, even though he had used the procedure before. We discern no real difference between these two statements—both reflect Grandberry's understanding and acceptance of the committee's action, namely to place him in a restrictive segregated setting as a result of the charged conduct. That Grandberry acceded to the *action* itself, and yet failed to explain why he would do so if he were innocent of the charges, forms the evidentiary basis for the CALCRIM No. 361 instruction.

In her closing argument, the prosecutor made precisely this point. She first noted: "You don't appeal, 'I was a bozo.' You don't appeal a statement. You appeal the program. I didn't want to have a change of program. I disagree with that change of program. Why are you moving me to a different section? I don't understand. No. I don't agree with it. That's what you appeal." Then, citing the statement common to both the classification review and the classification chrono, the prosecutor opined: "He's agreeing with the action because he was found with a weapon." Given this glaring omission in Grandberry's trial testimony, we conclude it was not error to instruct the jury with CALCRIM No. 361 in this case.

In doing so we reject Grandberry's assertion that his failure to explain or deny his acceptance of punishment for the weapons charge cannot be relied upon to justify use of CALCRIM No. 361 because he was never directly questioned about it during cross-examination.[2] Grandberry relies on *People v. Roehler* (1985) 167 Cal.App.3d 353, which states: "If a defendant has not been asked an appropriate question calling for either an explanation or denial, the instruction cannot be given, as a matter of law." (*Id.* at p. 392.) Several other cases have cited this language from *Roehler* without comment or analysis. (See *Vega*, *supra*, 236 Cal.App.4th at p. 498; *People v. Mask* (1986)

---

[2] After this potential failure to explain or deny was raised for the first time at oral argument, Grandberry's appellate counsel requested and was granted the opportunity to file supplemental briefing on this and other examples raised by the Attorney General, which he did.

188 Cal.App.3d 450, 455.) It is apparent, however, that in making the statement upon which Grandberry now relies, the *Roehler* court misapprehended *Saddler*.

According to *Roehler*, "[t]he *Saddler* majority was careful to state that assessment of the evidence *adduced* during " 'the scope of relevant cross-examination' " determines the applicability of the instruction in a given case." (*Roehler*, *supra*, 167 Cal.App.3d at p. 392, italics added.) Without citation to further authority, *Roehler* declared that the instruction is proper only if a defendant has "been asked an appropriate question calling for either an explanation or denial." (*Ibid.*) The problem is that *Saddler* did not limit the applicability of the instruction to matters that were asked of the defendant on cross-examination. Rather, as discussed above, *Saddler* opined that such an instruction is appropriate whenever the defendant "failed to explain or deny any fact of evidence *that was within the scope* of relevant cross-examination." (*Saddler*, *supra*, 24 Cal.3d at p. 682, italics added.) After reviewing the evidence presented at trial, the *Saddler* court concluded: "Since there were *no facts or evidence in the People's case* which defendant failed to explain that were in his particular knowledge to explain, we conclude that there was no support in the record for an instruction on drawing of adverse inferences from a failure to explain or deny." (*Id.* at p. 683, italics added.) The focus, then, is not on what was adduced during cross-examination, but on what could have been asked of the defendant on cross-examination in light of the evidence presented in the prosecution's case-in-chief and the defendant's own direct testimony.

*Saddler* discusses a number of prior cases in which such an instruction was held to be properly given, one of which, *People v. Perez* (1967) 65 Cal.2d 615 (*Perez*), is instructive. In *Perez*, the defendant was charged with four counts of first degree robbery. (*Id.* at pp. 616–617.) The prosecution presented evidence of the four robbery offenses as well as an uncharged prior robbery, admitted to establish a modus operandi bearing similarity to the charged crimes. (*Id.* at pp. 618–619.) In direct testimony, the defendant gave an alibi with respect to the robberies charged in counts 1 and 2 but was silent as to the robberies in counts 3 and 4. On cross-examination, the prosecutor sought to ask about the other charged robberies, but an objection that the question exceeded the scope

9

of direct examination was sustained. The prosecutor commented on the defendant's failure to explain or deny evidence as to counts 3 and 4 in closing argument, and the trial court gave an instruction permitting the jury to draw an adverse inference from the defendant's failure to explain or deny facts within his knowledge. (*Id.* at pp. 619–620.)

The Supreme Court found the instruction permissible. (*Perez*, *supra*, 65 Cal.2d at p. 621.) Noting that " 'a defendant who takes the stand and testifies in his own behalf waives his Fifth Amendment privilege against self-incrimination at least to the extent of the scope of relevant cross-examination' " (*id.* at p. 620), the court determined that cross-examination as to the robberies charged in counts 3 and 4 as well as the collateral robbery would have been proper because they "disclosed a plan, pattern, and *modus operandi* similar in many respects to those charged in counts 1 and 2" (*id.* at p. 621). Because the defendant failed to explain or deny the evidence against him as to the charged robberies in counts 3 and 4, as well as the uncharged robbery—matters the prosecutor *could have* asked about on cross-examination—the instruction was proper. (See *People v. Ing* (1967) 65 Cal.2d 603, 610–611 [concluding that the defendant's general denial of charged rape offenses on direct examination permitted cross-examination of other uncharged rape offenses as to which the defendant was silent; the defendant thus waived his state and federal constitutional privilege against self-incrimination with respect to the collateral rape offenses, and comment and instruction on his failure to deny them were not improper].)

We conclude a correct reading of *Saddler* allows for use of CALCRIM No. 361 when a testifying defendant has failed to explain or deny matters within the scope of relevant cross-examination, not simply those matters that were asked of the defendant on cross-examination. To the extent *Roehler*, *Vega*, and *Mask* hold to the contrary, we disagree with them.[3] Here, as stated above, the classification chrono was in evidence and

___

[3] The Bench Notes for CALCRIM No. 361 similarly cite to *Saddler* for the proposition that the instruction can only be given as a matter of law when the defendant is asked a question calling for an explanation or denial of incriminating evidence, the defendant knows the facts necessary to answer that question, and the defendant fails to

stated that Grandberry "agreed" with the action placing him in administrative segregation. Indeed, Grandberry acknowledged he was aware of this statement in the chrono and testified on direct examination that it was accurate. Why he would have agreed to the action if he was innocent of the weapons charge was plainly within the scope of permissible cross-examination and forms the evidentiary foundation for the instruction.

## C. *Due Process Challenge*

As a final matter, we reject Grandberry's argument that instructing the jury with CALCRIM No. 361 violated his due process right to a fair trial because it impermissibly privileged the prosecution over the defense. In support of this assertion, Grandberry cites a number of cases which he claims establish the general proposition that the prosecution and the defense in a criminal matter must be allowed to compete on an equal basis. (See *Holland v. Illinois* (1990) 493 U.S. 474, 481 [6th Amend. requirement that a jury venire be drawn from a fair cross section of the community deprives prosecution of the ability to " 'stack the deck' " in its favor so that the prosecution and the defense will compete on an equal basis in selecting the petit jury]; *Wardius v. Oregon* (1973) 412 U.S. 470, 474–475 [due process forbids the enforcement of alibi rules (requiring notice to the prosecution before an alibi defense can be tendered) unless reciprocal discovery rights are given to criminal defendants]; *People v. Moore* (1954) 43 Cal.2d 517, 526 [finding prejudicial

---

deny or explain the incriminating evidence when answering the question. (Bench Notes to CALCRIM No. 361 (2019) p. 130.) As we have discussed, *Saddler* is not authority for this point. Nor are any of the other cases cited in the Bench Notes as support for this view. (See *People v. Marsh* (1985) 175 Cal.App.3d 987, 994 [citing *Saddler* for the proposition that "[i]t is error to give this instruction in the absence of evidence in the People's case which is within the defendant's particular knowledge to explain and to which no explanation is offered"]; *People v. De Larco* (1983) 142 Cal.App.3d 294, 309 [citing *Saddler* in holding that of "primary importance" to the application of the instruction "is whether the facts or evidence that defendant allegedly fails to explain or deny are within defendant's knowledge"]; see also *People v. Marks* (1988) 45 Cal.3d 1335, 1346 [suggesting instruction was inappropriate where the defendant "did not fail to explain or to deny any important evidence against him and . . . testified extensively to a version of the events that contradicted the prosecution's case in all important respects"].)

error where jury instructions on self-defense were stated exclusively from the viewpoint of the prosecution and opining "[t]here should be absolute impartiality as between the People and the defendant in the matter of instructions"; see *id.*, pp. 527, 530–531].) Grandberry also relies on Chief Justice Bird's concurring opinion in *Saddler* to argue that CALCRIM No. 361 must be deemed constitutionally infirm for similar reasons because it "singles out the *accused's* testimony for its special negative scrutiny" thereby unfairly advantaging the prosecution. (See *Saddler*, *supra*, 24 Cal.3d at p. 685, conc. opn. of Bird, C.J.)

Grandberry overlooks that our high court has already rebuffed arguments challenging similar jury instructions on this basis. In *People v. Mayberry* (1975) 15 Cal.3d 143, the Supreme Court rejected a claim that a failure-to-explain-or-deny instruction was improper because it "unduly focused" on the defendant's testimony. (*Id.* at p. 161.) The court noted that such an instruction was consistent with Evidence Code section 413, which permits the trier of fact to consider a party's failure to explain or deny contrary evidence or facts in the case against that party when determining what inferences to draw from the evidence. (*Id.* at p. 160.) The majority in *Saddler* similarly rejected the argument that the challenged instruction "should never be given because it impermissibly singles out a defendant's testimony and unduly focuses upon it." (*Saddler*, *supra*, 24 Cal.3d at p. 680.) Citing *Mayberry*, the court observed: "Since the only testifying 'party' in a criminal case is the defendant, [Evidence Code section 413] can have reference only to him." (*Saddler*, at p. 681.)

Other courts have upheld the constitutionality of CALCRIM No. 361 from similar challenge. In *People v. Rodriguez* (2009) 170 Cal.App.4th 1062, the Second District found no constitutional infirmity in CALCRIM No. 361, despite the fact that it treats a testifying defendant differently from other witnesses. (*Rodriguez*, at pp. 1067–1068.) In reaching this conclusion, the court stressed that Evidence Code section 413 "distinguishes a criminal defendant from the other trial witnesses, whether prosecution or defense." (*Rodriguez*, at p. 1068.) More recently, our colleagues in Division 4 of this district rejected the exact argument presented here—that the instruction violated the defendant's

12

due process rights to a fundamentally fair trial by singling him out for treatment different from that of other witnesses. (*Vega*, *supra*, 236 Cal.App.4th at pp. 498–500.) In this regard, the court noted that when a defendant voluntarily testifies, " 'he may not stop short in his testimony by omitting and failing to explain incriminating circumstances and events already in evidence, in which he participated and concerning which he is fully informed, without subjecting his silence to the inferences to be naturally drawn from it.' " (*Id.* at p. 499, quoting *Caminetti v. United States* (1917) 242 U.S. 470, 493.)

Central to the holdings in all of these cases is that a testifying defendant in a criminal matter is unique. This is not, as Grandberry urges, a situation where due process requires that the prosecution and the defense be on equal footing with respect to the selection of a jury, or the scope of permissible discovery, or the phrasing of jury instructions. Rather, CALCRIM No. 361 is a consequence of a defendant's status as the only testifying party in a criminal proceeding. We conclude the instruction did not violate defendant's due process right to a fair trial.

## III. DISPOSITION

The judgment is affirmed.

13

_____
Sanchez, J.

WE CONCUR:

_____
Margulies, Acting P. J.

_____
Banke, J.

A152188  *People v. Grandberry*

14

Trial Court:        Del Norte County Superior Court

Trial Judge:        Hon. William H. Follett

Counsel:

Randy Baker, under appointment of the Court of Appeal under the First District Appellate Project, Independent Case System, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Laurence K. Sullivan and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

*A152188  People v. Grandberry*